## FALES, JUN., *versus* THOMPSON.

Plea of *non-tenure* not taken away by the act of 27th Feb. 1796. Assignees of a bankrupt not entitled to come in and prosecute a *real* action commenced by the bankrupt. A person who *merely*, as surety, enters into a rule of reference before a justice of the peace, does not thereby become a debtor to the adverse party, but the debt, as to the surety, must be considered as arising from the rendition of the judgment on the award.

THIS was a *real action*, in which *David Fales, Jun.* demanded against *Zebadiah Thompson* eighty acres of land, situate, &c. The *demandant* declared upon his own seisin within thirty years, and a disseisin by the *tenant* within that time. The *tenant* had pleaded the general issue, which was joined ; but his counsel now moved to have liberty to plead *non-tenure* to all but 60 acres, and as to those 60 acres, the general issue. The demandant's counsel objected, contending that the plea of *non-tenure* was taken away by the *second section* of an *act passed* Feb. 27, 1796, (*stat.* 1795, *c.* 75,) relating to *disclaimer*.

But *Strong, Sedgwick*, and *Sewall*, justices, were clear that the plea of *non-tenure* was not taken away by the statute ; that nothing but express, positive words could do it ; that the statute had no such words, and therefore admitted the plea. *Thacher*, J., gave no opinion on the point.

The *demandant's* counsel moved that the assignee * of [ * **135** ] *Fales*, who had been declared a bankrupt since the commencement of the present action, might be admitted to prosecute ; and he cited the *13th sect.* of the statute of the *United States* relative to bankruptcy, to prove the right of the assignee to prosecute the action. The Court held that the assignee could not come in under the statute, and prosecute a *real action* commenced by the bankrupt.

The *demandant*, in support of his claim, proved a judgment recovered by him against *Asa Thompson* and *Nehemiah Thompson*, at the Court holden in this county on the last Tuesday of Sept. 1801, for $1100 46 cents damages, and $31 15 cents costs, upon which execution issued, and was levied and extended, the 28th of Oct. 1801, on lands of *Asa Thompson*, being the lands demanded, and which were attached on the original writ in that action, March 10, 1810.

The *tenant* did not question the *regularity* of the extent, but claimed title to 60 acres of the lands demanded by virtue of a deed to himself from *Asa Thompson, Jun.*, dated Feb. 2, 1801, and registered Feb. 6, 1801 ; in which deed the lands were described as

9 *                                                    101

having been conveyed to him, *Asa Thompson, Jun.*, by his father; who was *Asa Thompson*, one of the *judgment-debtors*. The deed from *Asa Thompson*, the father, to *Asa Thompson, Jun.*, the son, was dated June 23, 1800, and registered the 25*th day of June*, in the same year.

These deeds, it was contended by the counsel for the *demandant*, were fraudulent against creditors; and as the first step to show that the deeds ought not to operate against the claim of the demandant in the present action, it would be necessary to prove that *Asa Thompson*, the father, was indebted to the demandant, *Fales*, at the time the deed was made from *Asa*, the father, to *Asa*, [ * 136 ] the son. And the counsel stated that *N.* * *Thompson*, one of the *judgment-debtors*, was indebted to *Fales ;* and that on the 16*th day of Sept.* 1799, *Fales* on the one part, and the *judgment-debtors* on the other part, entered into a rule of reference before a justice of the peace, submitting all demands between the parties to the determination of referees, agreeably to the statute; that on the 2*d day of July*, 1800, the referees met, heard the parties, and made their award; which was returned to and accepted by the Court of Common Pleas in the county of *Lincoln*, in Sept. 1800, and judgment rendered on the award against *Asa Thompson* and *Nehemiah Thompson ;* upon which judgment an action of debt was brought against them by *Fales*, the *demandant*, and the judgment rendered on which the execution issued which was levied and extended upon the lands in question.

The counsel for the *tenant* insisted that there was no debt due from *Thompson*, the father, at the time he conveyed the lands in question to his son ; that the rendition of the *first* judgment was what made him the debtor of *Fales :* this being *subsequent* to the time of the conveyance of the lands by the father to the son, could not affect that conveyance; and therefore it could not be considered fraudulent as it respected the present demandant. Had he entered into the rule for a debt of his own, it might have been otherwise ; but as he has merely a surety for the performance, in case any thing *should be* recovered, he could not be considered as a debtor until the uncertainty was made a certainty; which was not until the judgment in Sept. 1800, or at any rate not before the award was made in July, 1800, both of which were subsequent to the deed of the father to the son.

The counsel for the demandant contended that, by entering into the rule with *Nehemiah Thompson*, he, *Asa Thompson*, the father, had voluntarily put himself in the same situation with [ * 137 ] *Nehemiah ;* as * much as if he had entered into a bond in which he should have bound himself as *surety*, with

*Nehemiah* as principal; and therefore that he must be considered as a debtor of *Fales*, the demandant, at the time of the conveyance of the lands in question to *Asa Thompson, Jun.*

The Court consulted a short time on the bench ; when SEDGWICK, J., stated to the jury that the Court, upon the best consideration they could give the case, were inclined to the opinion that there was no existing debt due from *Asa Thompson*, the father, to the demandant, *Fales*, at the time the first deed was executed ; that entering into the rule of reference, as surety for *Nehemiah Thompson*, did not create a debt in *Asa*, but that the debt, as it respected him, must be considered as arising and *first* becoming due upon the rendition of the judgment in Sept. 1800.    As this was subsequent to the deed of *Asa Thompson* to *Asa Thompson, Jun.*, the jury ought to find a verdict for the *tenant*.

The jury found a verdict accordingly.

*Whiting* for the *demandant.*

*Parsons* and *Thomas* for the *tenant.*

NOTE.—Is it certain that the assignee was not entitled in this case to come in and prosecute the action ?   See and compare the 11*th* and 13*th sections* of the law of the *United States* for establishing a uniform system of bankruptcy.   See also 2 *H. B. Rep.* 444, *Smith & Al. Ass.* vs. *Coffin & Ux.   Quære,* whether it appeared, in any part of the record produced in this case, that *Asa Thompson* was the *surety* of *Nehemiah Thompson.*   If, as it is believed, it did not *so* appear, would it be competent for the *tenant* to prove the fact by matter *dehors ?*

Since the trial, the reporter has been informed, from the *best authority,* that *Thacher,* J., did not concur with the rest of the Court in the opinion which *Sedgwick,* J., stated as *that* to which the Court inclined.